# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46638-4-II |
| Respondent, | |
| v. | |
| COLE TAYLOR RIFE, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Cole Rife appeals his conviction and sentence for one count of second degree assault and one count of attempted first degree burglary.  We resolve his numerous arguments by holding that (1) Rife failed to preserve an appearance of fairness doctrine issue, (2) filing the amended information shortly before trial did not prejudice him, (3) his right to be present was not violated by peremptory challenges taken during a bench conference, (4) his public trial right was not violated by written peremptory challenges, (5) the State provided sufficient evidence of his intent to commit burglary, (6) Rife's prosecutorial misconduct claims fail, (7) Rife received effective assistance of counsel, (8) the trial court properly instructed the jury on self-defense, and (9) the sentencing court erred by refusing to consider an exceptional sentence below the standard sentencing range.  Consequently, we affirm Rife's convictions and we remand for resentencing.

FACTS

A. *Crimes and Aftermath*

After drinking at a friend's house, Cole Rife and Tyler (Ty) Burk went with several of their friends to a party on Maple Street in Lewis County. They were not invited to the party; instead, Rife and Burk "were intending to fight some people there." 1 Verbatim Report of Proceedings (VRP) at 88. When the group arrived at the party, the hosts asked them to leave, and they complied. Outside, Rife argued loudly with his girlfriend, screaming at her.

Meanwhile, Logan Crump arrived at the party. Crump went outside onto the porch, where he could hear Rife screaming from down the street. The people inside the house locked the doors, leaving Crump outside with some of his friends. Rife, still screaming, came to the front porch "and wanted to fight almost everybody in the party." 1 VRP at 65. Rife and Burk then tried to kick down the door. A neighbor saw Rife pounding on the door, "trying to get in." 2 VRP at 150. Those on the porch thought Rife was trying to get back inside to fight someone.

Unable to get into the house, Rife began shoving Crump, screaming at him. Burk urged Rife to fight Crump. Crump did not threaten Rife, nor did he want to fight him. Rife hit Crump in the face, then Crump put Rife in a headlock. Rife knocked Crump over, then straddled him while Crump lay on his back. Rife punched Crump in the face about ten or fifteen times and kicked him in the face and chest. Crump sustained a broken jaw, a fractured tooth, a concussion, black eyes, and lacerations around his eyes.

The following night, Rife called Crump. He told Crump that "he was sorry for the whole thing, that he just sees red when he's angry." 1 VRP at 73. Rife said: "'Please don't call the cops. I'll pay for everything.'" 1 VRP at 73.

B.     *Amended Information*

The State charged Rife with one count of second degree assault[1] and one count of attempted first degree burglary.[2]  The Friday before trial, which started on Monday, the State sought to amend the information to add a count of witness tampering.[3]  Rife objected to the proposed amendment.  The State argued that there were no new facts underlying the witness tampering charge because it "stem[med] from a phone call that was made from the defendant to the victim, which the defendant admits to making."  VRP (July 17, 2014) at 3.  The trial court ruled that the State could amend the information, but said that Rife should object at the outset of trial if he was still unprepared to face the charge.

On the first day of trial, the parties again discussed the amended information.  Rife requested severance of the witness tampering charge, but he did not request a continuance.  When pressed, Rife could not point to specific prejudice from the amendment to the information.  He admitted that the witness tampering relied on the "same evidence" that was already known to the defense—namely, that Rife made a phone call to Crump the day after the offense, which was mentioned in the probable cause statement.  1 VRP at 14.  He argued generally that the amendment deprived Rife of "an opportunity to evaluate this whole case and determine what he wants to do with it," given the new charges.  1 VRP at 10-11.  The trial court permitted the amendment because Rife had always had the evidence of the phone call, and because Rife did

_____

[1] RCW 9A.36.021(1)(a).

[2] RCW 9A.52.020; 9A.28.020(1).

[3] RCW 9A.72.120.

3

No. 46638-4-II

not allege that the State added the witness tampering charge in retaliation for his decision not to plead guilty.

C.      *Pretrial Matters*

Before jury selection, the trial court disclosed:

> I believe, if I'm not mistaken, that I am acquainted with the defendant's family, specifically his mother and his aunt and his grandparents, and have been for many years. It might even be, if I went back far enough, that I may very well have conducted the ceremony when his mother and father were married, if I'm not mistaken. So if that is a problem from the State or the defense . . . then I will recuse and allow one of the other judges to hear it. That's something else you can talk with your client about.

1 VRP at 18. The following colloquy then occurred:

> [STATE]: I presume from the Court what you're telling us is you don't believe there's any conflict for yourself.
> [COURT]: I don't because it's a jury trial. On the other hand, there's—it's a relationship I want everyone to be aware of. We're not—some years back his grandparents and my wife and I were very good friends, very close friends. Vacationed to Hawaii together, did things together. We haven't done that for probably—it's probably been 15 years now. But his aunt still cuts my hair, among other things.
> [STATE]: Does the Court know Mr. Rife then?
> [COURT]: Except by name, no.
> [STATE]: State has no issue, Judge.
> [Rife]: I don't think we have an issue, but I'll talk to Mr. Rife.
> [COURT]: Go talk to him. Let me know when you're ready to go.

1 VRP at 18-19. The parties never again raised the issue.

Rife was present during jury selection. Peremptory challenges were not spoken aloud. Instead, the parties wrote their peremptory challenges on a list that showed which party struck which juror.

4

D.      *Trial Testimony*

During trial, the State's witnesses testified to the above facts.  The State also elicited testimony from Burk that he was charged with second degree assault, which is "what [Rife is] charged with here."[4]  1 VRP at 96.  Burk testified that he and Rife were accomplices.  Rife cross-examined Burk about his decision to cooperate with the State.  Rife elicited testimony from Burk about Burk's plea deal, which required him to testify at Rife's trial.  The following questioning occurred:

> [Rife]:      And what was the threat if you didn't [plead guilty to third degree assault]?
> [Burk]:      I'm pretty sure that I would be found guilty of the second degree [assault] and I won't get any deal.  The deal's off, basically.
> [Rife]       So what kind of time were you looking at?
> [Burk]:      I'm not sure exactly what the maximum is.
> [Rife]:      Years in prison?
> [STATE]:  Objection.
> [COURT]:  Sustained.
> [Rife]:      What kind of deal did you get from the State?
> [STATE]:  Excuse me, Your Honor.  [Counsel] obviously knows that's not what is a possibility in a crime like this, and to ask that question, I don't know if that's going to entitle the State to—he's talked about years in prison.

1 VRP at 98.

Rife continued his cross-examination of Burk, eliciting the fact that he pleaded down from second degree to third degree assault, and also pleaded guilty to attempted residential burglary and fourth degree assault.  Rife then asked Burk how much jail time he would serve, and Burk said, "It's now zero to ninety days."  1 VRP at 99.

---

[4] Burk initially testified that he pleaded guilty to second degree assault, but shortly thereafter he testified that he pleaded down from second degree assault to third degree assault.  It appears Burk may have misspoken when he said he pleaded guilty to second degree assault.

On redirect examination, the State elicited from Burk that his attorney had told him he was Rife's accomplice, and that was why he pleaded guilty. The State also elicited that Burk was initially facing three to nine months in jail, but would serve only one to three months with the plea deal. Rife did not object. On recross-examination, Rife asked Burk whether he was originally facing a sentence of three to nine months, and Burk agreed. Rife asked Burk whether he was threatened with prosecution for attempted first degree burglary, and Burk said no. Then, on redirect examination, the prosecutor asked Burk, "Is part of the reason that you entered into this [plea] agreement based on advice of counsel?" 3 VRP at 406. Burk agreed. Rife did not object.

Rife's witnesses testified to a different version of events. Rife's brother Bo testified that Crump and Rife were "screaming back and forth at each other," and that Crump pushed Rife at the beginning of the altercation. 2 VRP at 229. In other words, he testified that the two engaged in a mutual fight, and Crump began it. He also testified that Burk alone attempted to kick down the door without Rife's involvement. As the State began to cross-examine Bo,[5] the prosecutor asked, "Are you sure you were at [the house on] Maple? You seem to have seen something that no one else saw." 2 VRP at 234. Rife objected, and the trial court sustained the objection. Cody Sanchez, a friend of Rife's, similarly testified that Crump began the altercation. Rife testified that Crump initiated a pushing match, then punched Rife. Rife testified that he then tackled Crump and they continued to struggle on the ground.

---

[5] We use Bo Rife's first name for clarity, intending no disrespect.

E.       *Closing Argument and Jury Instructions*

In closing argument, Rife addressed the question of whether Crump could be sure who kicked him and broke his jaw. He argued: "It's interesting that Mr. Burk denies really any involvement other than being there, but then he takes this plea deal. And it's just strange to me that if you really didn't do anything, you didn't kick the guy . . . why would you take the plea deal?" 3 VRP at 472. At the beginning of his rebuttal closing argument, the prosecutor said: "Why did Ty Burk take a deal? Because Ty's just as guilty as this guy is. That's why he took a deal. Because he's an accomplice to this guy's actions. . . . Of course he's guilty. Just as of course he's guilty of the same conduct." 3 VRP at 474.

Rife proposed several jury instructions. He proposed an instruction modeled on 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 17.02, at 253 (3d ed. 2008) (WPIC), on the lawful use of force. The trial court pointed out that the instructions tell the court to give WPIC 16.05 (on the meaning of "necessary") whenever WPIC 17.02 is given. The trial court gave Rife's proposed instruction modeled on WPIC 17.02, and it also instructed the jury on the meaning of "necessary," modeled on WPIC 16.05.

Rife further proposed a jury instruction modeled on WPIC 17.05, which would tell the jury that Rife had no duty to retreat from an attack. Rife also proposed an instruction on WPIC 17.04, which would instruct the jury that Rife was entitled to use reasonable force even if he was not in actual danger, but was instead mistaken about being in danger. The trial court rejected the proposed "duty to retreat" instruction, saying that there was no evidence about Rife's opportunity to retreat. The trial court also rejected the "actual danger" instruction, noting that Rife had testified that he was not mistaken—he accurately felt that his safety was at risk. The trial court

7

said that Rife's other proposed instructions, WPICs 17.02 and 16.05, adequately instructed the jury on Rife's theory of the case: that his use of force was reasonable to defend himself against the circumstances as he perceived them.

The jury was instructed that the "lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law," but the statements are "not evidence." Clerk's Papers (CP) at 32. The jury was instructed that the jurors were "the sole judges of the credibility of each witness" and of "the value or weight to be given to the testimony of each witness." CP at 32.

F.     *Verdict and Sentencing*

The jury found Rife guilty of assault and attempted burglary, but found him not guilty of witness tampering. At sentencing, Rife requested an exceptional sentence below the standard sentencing range based on the unusual nature of the attempted first degree burglary,[6] Rife's attempt to compensate Crump for his injuries, and Rife's youth and family support. The trial court denied a downward departure, saying:

> Unfortunately, in the years since [the Sentencing Reform Act (SRA) has] been passed, when a trial judge, assuming he or she has the authority to do so, sentences somebody under the SRA to a sentence above the standards range [sic], the Court of Appeals has generally upheld it. When a trial judge has sentenced somebody below the standard range, absent a stipulation from the prosecutor's office, by and large, almost without exception, the Court of Appeals and Supreme Court have reversed that.
>
> So it seems to be a one-way street, and it's always seemed to be a one-way street. I've always thought that was unfair. I've never particularly liked the SRA because, as far as I'm concerned, it takes the discretion away from me and every other trial judge who is elected to exercise it, and it gives it basically to the

---

[6] In support of this argument, Rife did not argue any specific statutory mitigating factor, but instead pointed out that the facts establishing the burglary charge tended also to establish the assault charge.

prosecutor, because the outcome of a case is determined by what they charge. And assuming they can prove to the satisfaction of a jury what it is they charge, then the court in essence is stuck, because I have to sentence within the requirements of the SRA.

Every time the Legislature meets, there's always hope that maybe, just maybe, they'll come to their senses and repeal the thing. Unfortunately, that's never happened. I'm always eternally optimistic, but I'm not holding my breath for that.

I'm constrained by the SRA. I can't just do what I want to. Those days are long past, and they certainly haven't existed in this state with respect to felony offenses since 1981.

VRP Aug. 27 at 21-22. Accordingly, the trial court sentenced Rife to a standard range sentence. Rife appeals.

## ANALYSIS

### I. APPEARANCE OF FAIRNESS ISSUE NOT PRESERVED

Rife argues that he is entitled to a new trial because the trial court violated the appearance of fairness doctrine. The State argues that Rife cannot raise this claim on appeal because he failed to "tak[e] some action in the trial court." Br. of Resp't at 11. We agree with the State.

We will generally not consider an issue that a party raises for the first time on appeal unless it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). Although there is a constitutional right to an impartial judge, a potential violation of the appearance of fairness doctrine is not necessarily manifest constitutional error. *See State v. Tolias*, 135 Wn.2d 133, 140, 954 P.2d 907 (1998); *State v. Morgensen*, 148 Wn. App. 81, 90-91, 197 P.3d 715 (2008); *see also City of Bellevue v. King County Boundary Review Bd.*, 90 Wn.2d 856, 863, 586 P.2d 470 (1978) ("Our appearance of fairness doctrine, though related to concerns dealing with due process considerations, is not

constitutionally based."). Nor does Rife argue that any manifest constitutional error occurred here. Therefore, a defendant may fail to preserve this claim if he does not object below. *Morgensen*, 148 Wn. App. at 90-91.

Here, the judge asked both parties whether they would consent to his presiding over the case, and both agreed. Specifically, Rife's attorney said, "I don't think we have an issue, but I'll talk to Mr. Rife." 1 VRP at 18-19. He did not return with an objection; thus, he objects for the first time on appeal.

Rife claims that a party may always raise an argument about the appearance of fairness doctrine where it involves "personal or actual bias." Br. of Appellant at 16 (citing CODE OF JUDICIAL CONDUCT (CJC) 2.11(C); *In re Disciplinary Proceeding Against Jones*, 182 Wn.2d 17, 42, 338 P.3d 842 (2014)). This claim fails for two reasons.

First, Rife's argument is based on the CJC, rather than on RAP 2.5. As such, it does not impact this court's analysis about whether to review this unpreserved issue. The CJC allows a judge to accept a party's express waiver of a potential judicial disqualification, but it does not apply where a judge "has a personal bias or prejudice concerning a party or a party's lawyer." *Compare* CJC 2.11(C), *with* CJC 2.11(A)(1). Thus, the rule directs judges not to allow parties to expressly waive a judge's actual personal bias or prejudice. But the CJC is directed to judges and seeks to guide their ethical behavior. *See* Scope of CJC. CJC 2.11(C) is relevant to a judge's determination about whether parties should be permitted to waive a claim of bias, but it does not require us to review an issue raised for the first time on appeal. *See also Jones*, 182 Wn.2d at 43 ("CJC 2.11(C) does not mean that if a litigant proceeds through trial without ever

raising the issue of the judge's bias, the issue remains open for challenge after a case is fully litigated.").

Second, CJC 2.11(A) and (C) instruct judges not to allow parties to waive a claim that the judge should disqualify himself when the judge "*has* a personal bias or prejudice concerning a party or a party's lawyer." CJC 2.11(A)(1) (emphasis added). Therefore, Rife misreads the rule when he argues that it categorically permits a party to raise this claim for the first time on appeal where, as here, a party merely claims that the judge had the appearance of unfairness. Where the judge does not have an actual bias or prejudice, the judge may permit parties to waive judicial disqualification for appearance of fairness. Therefore, Rife's argument based on the CJC fails to rescue his unpreserved claim of error, and we do not reach its merits.

II. AMENDMENT TO INFORMATION

Rife argues that the trial court erred by permitting the State to amend his information immediately before trial. He also argues that the trial court should have dismissed his case for the governmental misconduct in amending his charges late. We disagree.

A.    *Trial Court's Order Allowing Amendment*

Rife argues that the trial court abused its discretion by allowing the State to amend the information. We disagree.

CrR 2.1(d) governs amendment to a charging document. It provides that "[t]he court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced." CrR 2.1(d). The defendant bears the burden of demonstrating prejudice. *State v. Emery*, 161 Wn. App. 172, 201, 253 P.3d 413

11

(2011). We review a trial court's ruling on a proposed amendment to an information for an abuse of discretion. *State v. Ziegler*, 138 Wn App. 804, 808, 158 P.3d 647 (2007).

Rife alleges that the amended information prejudiced him by denying him his rights to a speedy trial and effective assistance of counsel. He claims that he was "forced to go forward unprepared," but he provides no factual support for this claim. Br. of Appellant at 24. The record shows that the witness tampering charge stemmed from facts already in Rife's possession. Rife did not allege that he was unaware of the facts underlying the witness tampering charge; instead, he argued that he was not aware that the State might file that charge. Moreover, it appears that there was no prejudice because the jury acquitted Rife of this charge. Rife fails to demonstrate specifically how the amended information prejudiced him; therefore, we hold that the trial court did not abuse its discretion by allowing the amendment.

B.      *Governmental Misconduct for Amendment*

Rife further argues that the trial court should have dismissed his case pursuant to CrR 8.3(b) because the government mismanaged his case by amending the information just prior to trial. We disagree.

The trial court may dismiss a case with prejudice under CrR 8.3(b) where governmental misconduct or mismanagement has prejudiced the defendant.[7] *See State v. Michielli*, 132 Wn.2d 229, 240-43, 937 P.2d 587 (1997). The defendant bears the burden of proving by a preponderance of the evidence both misconduct and the resulting prejudice to his right to a fair trial. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). Dismissal is an extraordinary

---

[7] We note that Rife did not request dismissal of his charges below, nor did he cite CrR 8.3 to the trial court. Nevertheless, we use our discretion to reach this issue's merits.

remedy, which is available only when a defendant establishes by a preponderance of the evidence that the State's conduct has prejudiced his defense. *State v. Ramos*, 83 Wn. App. 622, 637, 922 P.2d 193 (1996). To show prejudice, the defendant must prove that the governmental misconduct forced him to choose between two constitutional rights, such as the right to a speedy trial and adequately prepared counsel. *State v. Woods*, 143 Wn.2d 561, 583-84, 23 P.3d 1046 (2001). The misconduct must interject "new facts" into the case, which forces the defendant to make this choice. *Woods*, 143 Wn.2d at 584.

Assuming without deciding there was governmental misconduct, Rife fails to show prejudice. There is no evidence in the record that the prosecutor's act of amending charges on July 17 interjected "new facts" into the proceeding which placed Rife in the untenable situation of going to trial unprepared or waiving his speedy trial right and asking for a continuance. *Woods*, 143 Wn.2d at 584. The facts upon which the additional charge were based had been available to the defense all along. Therefore, any misconduct in amending the information late could not have interjected "new facts" which made Rife choose between his right to a speedy trial and adequately prepared counsel. *Woods*, 143 Wn.2d at 584. Nor does the record show that Rife was prejudiced in preparing a defense; in fact, he was acquitted of witness tampering. Thus, this claim fails.

## III. RIGHT TO BE PRESENT

Rife argues that the trial court violated his right to be present when it conducted peremptory challenges during a bench conference. We disagree.

A defendant has a right to be present "'at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.'" *State v.*

13

*Love*, 183 Wn.2d 598, 608, 354 P.3d 841 (2015), *cert. denied*, 136 S. Ct. 1524 (2016) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987)). Jury selection is a critical stage of a criminal proceeding. *Love*, 183 Wn.2d at 608. In *Love*, the defendant was in the courtroom during jury selection. 183 Wn.2d at 608. Our Supreme Court held that the appellant, therefore, failed to demonstrate that he was not present. 183 Wn.2d at 608.

Here, as in *Love*, Rife has failed to demonstrate that he was not present, because the record shows he was in the courtroom during jury selection. Thus, his claim fails. *Love*, 183 Wn.2d at 608.

## IV. PUBLIC TRIAL RIGHT

Rife argues that the trial court violated his right to a public trial when it heard peremptory challenges in a private bench conference. We disagree.

Both the state and federal constitutions guarantee a criminal defendant's right to a public trial. U.S. CONST. amend. VI; WASH. CONST. art I, § 22. Our Supreme Court discussed the issue of whether a defendant's public trial right is violated by written peremptory challenges in *Love*, saying: "[W]ritten peremptory challenges are consistent with the public trial right so long as they are filed in the public record." *Love*, 183 Wn.2d at 607.

Here, the trial court's voir dire procedure was similar to that conducted in *Love*, where the trial court took peremptory challenges at a sidebar in open court, and the peremptory challenges appear in the written record. 183 Wn.2d at 602-03. Thus, the peremptory challenges here did not violate Rife's right to a public trial. 183 Wn.2d at 607.

V. SUFFICIENCY OF THE EVIDENCE

Rife argues that the State provided insufficient evidence to support his conviction for attempted first degree burglary because it failed to prove that he had the required intent. Specifically, he argues that the State failed to prove that he intended to commit assault within the building, as opposed to on the porch outside. We disagree.

A.      *Standard of Review*

Due process requires the State to prove every element of the charged crime beyond a reasonable doubt. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). To determine if the State presented sufficient evidence, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015). An appellant's claim of insufficient evidence admits the truth of the State's evidence and "all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

B.      *Sufficient Evidence of Attempted Burglary*

First degree burglary requires proof that the defendant entered a building with intent to commit a crime against a person or property therein. RCW 9A.52.020(1). A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he does any act which is a substantial step toward committing that crime. RCW 9A.28.020(1). We may infer intent where the circumstances indicate such intent as a matter of logical probability. *State v. Johnson*, 159 Wn. App. 766, 774, 247 P.3d 11 (2011).

Here, the State presented evidence that Rife and Burk went to the party with the "inten[t] to fight some people there." 1 VRP at 88. The State also presented evidence that Rife and Burk were trying to kick down the door to the house while Rife was acting belligerently. Multiple witnesses testified that Rife was aggressively seeking entry to the house, pounding or kicking on the door, while demanding to be let in. Witnesses testified that Rife wanted to enter the house to fight. Viewing these facts in the light most favorable to the State, a rational trier of fact could have found that Rife intended to commit assault within the building. Therefore, this argument fails.

## VI. PROSECUTORIAL MISCONDUCT

Rife argues that the prosecutor committed misconduct three times: by (1) comparing one witness's testimony to others' during cross-examination, (2) misstating the seriousness of Rife's charges, and by (3) referring during closing argument to a witness's attorney's advice to plead guilty.[8] His arguments fail.

A.    *Standard of Review*

To establish prosecutorial misconduct, a defendant bears the burden to establish both that (1) the prosecuting attorney committed misconduct by making inappropriate remarks, and (2) those remarks had prejudicial effect. *See State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012).

If the defendant objected at trial, then we analyze whether the prosecuting attorney's conduct was improper and, if so, whether the misconduct resulted in prejudice that had a

---

[8] Rife also says in passing that this prosecutorial misconduct is grounds for dismissal under CrR 8.3(b). However, the remedy on appeal for prosecutorial misconduct is reversal and a new trial, not dismissal with prejudice. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. The defendant must show that prejudice occurred in light of the entire record. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

Where the defendant failed to object to the prosecuting attorney's misconduct at trial, we apply a heightened standard of review and hold that the misconduct claim is waived unless the defendant shows that the misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. This heightened standard of review requires the defendant to show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). We focus less on whether the conduct was flagrant and ill intentioned and "more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762.

B.      *Cross-Examination*

Rife argues that the prosecutor committed misconduct by asking a defense witness to judge other witnesses' testimony. The State argues that reversal is not required because any error was harmless. We agree with the State.

A prosecuting attorney commits misconduct when his cross-examination seeks to compel a witness to opine whether another witness is telling the truth. *State v. Suarez-Bravo*, 72 Wn. App. 359, 366, 864 P.2d 426 (1994); *State v. Padilla*, 69 Wn. App. 295, 299, 846 P.2d 564 (1993). Such questioning invades the jury's province and is unfair and misleading. *State v. Castaneda-Perez*, 61 Wn. App. 354, 362, 810 P.2d 74 (1991). Here, the prosecutor asked Bo:

17

"Are you sure you were at [the house on] Maple? You seem to have seen something that no one else saw." 2 VRP at 234. Rife objected, and the trial court sustained his objection. The trial court did not issue a curative instruction.

Assuming without deciding that this was misconduct, it does not require reversal. Rife bears the burden of showing that the question was prejudicial in light of the entire trial. *Thorgerson*, 172 Wn.2d at 442. He fails to carry this burden.

Here, Rife objected before Bo answered the question, and this objection was sustained. The jury was instructed that it was the sole judge of witnesses' credibility, and that lawyers' comments were not evidence. The prosecutor did not rely on Bo's inconsistency with other witnesses in closing argument. Moreover, overwhelming evidence supported Rife's conviction because several witnesses testified to highly consistent versions of events that established Rife's guilt. Thus, Rife cannot show that this unanswered question and the prosecutor's accompanying comment had a substantial likelihood of affecting the jury's verdict.

C.      *Seriousness of Charges*

Rife argues that the prosecutor committed misconduct by improperly "testif[ying]" to incorrect facts about the amount of prison time Burk faced. We disagree.

Here, Rife asked Burk during cross-examination "what kind of time [he was] looking at." 1 VRP at 98. Burk said he was not sure. Rife asked, "Years in prison?" 1 VRP at 98. The prosecutor objected as follows: "[Counsel] obviously knows that's not what is a possibility in a crime like this." 1 VRP at 98. Rife did not object.

Rife argues that the prosecutor's objection was contrary to the evidence, because Burk "was in fact facing the possibility of years in prison had he not cooperated." Br. of Appellant at

38. Rife misrepresents the record. The record does not show that Burk was ever "facing" a charge of attempted first degree burglary. Burk testified that the State never sought to charge him with that crime. Instead, Burk pleaded guilty to a charge of attempted residential burglary. Attempted residential burglary with an offender score of 1[9] would have subjected Burk to a maximum sentence of 9 months. RCW 9.94A.510, .515, .595. Indeed, Burk testified that the maximum amount of confinement he faced was 9 months. It was not contrary to the evidence or to the truth for the prosecutor to say that Burk never faced "[y]ears in prison." 1 VRP at 98. Thus, the prosecutor's objection was not misconduct.

D.    *Closing Argument*

Rife argues that the prosecutor committed misconduct in closing argument by improperly commenting on Burk's attorney's advice that Burk should plead guilty.[10]

Here, during Rife's closing argument, his counsel insinuated that Burk was lying when he downplayed his role in the assault. In direct response in rebuttal closing argument, the prosecutor said: "Why did Ty Burk take a deal? Because [Burk is] just as guilty as [Rife] is. That's why [Burk] took a deal. Because he's an accomplice to [Rife's] actions. That's why an attorney advised him to take a deal." 3 VRP at 474. Rife did not object.

---

[9] The State argues that Burk's offender score would have been 1 due to being sentenced with another current offense. Rife argues it might have been 0. For the sake of argument, we accept as true the State's higher estimate that Burk would have had an offender score of 1.

[10] Rife alternatively characterizes this misconduct as burden-shifting, improper vouching, and impugning defense counsel. However, he fails to develop any of these arguments. We hold that Rife waived these specific issues. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Because Rife did not object to this comment, he waived the claim unless he shows that no curative instruction would have obviated any prejudicial effect on the jury and that the resulting prejudice was substantially likely to affect the jury's verdict. *Emery*, 174 Wn.2d at 761. But here, a curative instruction could have obviated any potential prejudicial effect. Had Rife objected, the trial court could have instructed the jury to disregard this argument. *See In re Det. of McGary*, 175 Wn. App. 328, 343, 306 P.3d 1005 (2013); *State v. Eastabrook*, 58 Wn. App. 805, 817, 795 P.2d 151 (1990). The jury could have been reminded that they were the sole judges of credibility and that the State bore the burden of proving each element of the crimes charged. Thus, because any potential resulting prejudice could have been cured had he objected, Rife waived his claim that the prosecutor committed reversible misconduct. *See Thorgerson*, 172 Wn.2d at 443.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Rife argues that he received ineffective assistance of counsel because his counsel failed to object to the prosecutor's questions to and comments about Burk during cross-examination and closing argument. We disagree.

To show ineffective assistance of counsel, a defendant must show that (1) defense counsel's conduct was deficient and (2) the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance, Rife must show that defense counsel's performance fell below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. To show prejudice, Rife must show a reasonable probability that, but for counsel's purportedly deficient conduct, the outcome of the

20

trial would have differed. 153 Wn.2d at 130. If Rife fails to establish either prong of the ineffective assistance of counsel test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Because ineffective assistance of counsel claims present mixed questions of law and fact, we review them de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

"The threshold for the deficient performance prong is high, given the deference afforded to [the] decisions of defense counsel in the course of representation." *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To show deficient performance, the petitioner must show the absence of any conceivable legitimate strategy supporting counsel's action. *Grier*, 171 Wn.2d at 33. And where a claim of ineffective assistance of counsel arises from counsel's failure to object, the appellant must show that such an objection would have been sustained. *See In re Pers. Restraint of Davis*, 152 Wn.2d 647, 748, 101 P.3d 1 (2004).

Rife argues that counsel was deficient for failing to object when the prosecutor asked Burk: "Is part of the reason that you entered into this [plea] agreement based on advice of counsel?" Br. of Appellant at 42 (quoting 3 VRP at 406). He also argues that his counsel was deficient for failing to object in closing argument when the prosecutor said that Burk was guilty and "[t]hat's why an attorney advised him to take a deal." Br. of Appellant at 42 (quoting 3 VRP at 474). We disagree.

Rife cannot show deficient performance. Here, there was a conceivable legitimate strategy underlying counsel's decision not to object to this question and argument. Counsel may have wanted not to call attention to Burk's reasons for entering the plea agreement, because in closing argument he implied that Burk was downplaying his own involvement in the crime.

Moreover, to object may have called attention to Burk's acceptance of responsibility, which would undercut Rife's argument. We hold that Rife has failed to rebut the strong presumption that counsel's performance was effective. *Grier*, 171 Wn.2d at 33. Therefore, his claim of ineffective assistance of counsel fails, and we do not reach the question of whether any prejudice resulted. *Foster*, 140 Wn. App. at 273.

## VIII. SELF-DEFENSE JURY INSTRUCTION

Rife argues that the trial court erred by giving an improper instruction on self-defense, which instruction was modeled on WPIC 16.05. Rife also argues that the trial court erred by refusing to give two of his proposed instructions. We disagree with both of these arguments.

### A. *Standard of Review*

We review jury instructions de novo and evaluate a challenged jury instruction "in the context of the instructions as a whole." *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993). Jury instructions are sufficient when they allow the parties to argue their theories of the case, they are not misleading, and they properly inform the jury of the applicable law when read as a whole. *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012). Jury instructions on self-defense must do more than adequately convey the law; they must make the "'relevant legal standard manifestly apparent'" to the average juror. *McCreven*, 170 Wn. App. at 462 (internal quotation marks omitted) (quoting *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996).

A defendant is entitled to a jury instruction if substantial evidence supports it. *State v. O'Dell*, 183 Wn.2d 680, 687, 358 P.3d 359 (2015). The trial court should view the evidence in

the light most favorable to the defendant when determining whether substantial evidence supports a jury instruction on an affirmative defense. *O'Dell*, 183 Wn.2d at 687-88.

B.       *Necessity Instruction*

Rife argues that the trial court erred by giving an instruction modeled on WPIC 16.05, on the necessity of force in self-defense. We disagree.

Rife argues that the necessity instruction is applicable only in justifiable homicide cases, but he provides no authority in support of this argument. "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)).

In addition, Rife's argument fails on its merits. First, WPIC 16.05 applies in assault cases. *See State v. Sampson*, 40 Wn. App. 594, 599 n.4, 699 P.2d 1253 (1985); *State v. Fesser*, 23 Wn. App. 422, 424 n.1, 595 P.2d 955 (1979).[11] Second, Rife does not explain how this instruction failed to make the relevant legal standard apparent to the jury. Rife sought to show that he acted in self-defense, and the law requires a defendant alleging self-defense to prove that he exercised no greater force than was reasonably necessary. *State v. Werner*, 170 Wn.2d 333, 337, 241 P.3d 410 (2010). Thus, the relevant legal standard required him to prove that his force was necessary as defined in WPIC 16.05. Rife's claim fails.

---

[11] WPIC 17.02, which instruction Rife requested, specifies in its "Note on Use" that the trial court must use WPIC 16.05 along with it.

C.     *Adequacy of Instructions*

Rife also argues that the trial court prevented him from instructing the jury on his theory of the case because it did not give two of his proposed instructions. The State argues that Rife was not entitled to these instructions because evidence did not support them. We agree with the State.

Rife appears to argue that the trial court erred by not giving his proposed instructions on actual danger (WPIC 17.04) and the duty to retreat (WPIC 17.05).[12] The evidence did not support these two instructions. WPIC 17.04 provides that a person may defend himself "if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful." But Rife presented no testimony suggesting that he was mistaken about the danger he faced. Instead, the defense witnesses testified that Rife and Crump were engaged in a mutual fight. Thus, no evidence entitled Rife to this instruction.

WPIC 17.05 reads: "It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force." There was no testimony establishing that Rife was in a place he had a right to be; instead, the testimony showed that he had been ejected from the party but remained on the porch. Thus, because no evidence supported these affirmative defenses, the trial court did not err by refusing to give them. *O'Dell*,

---

[12] Rife does not point to what testimony established his entitlement to these instructions. He does not cite the record nor provide supporting argument as required by RAP 10.3(a)(6). Nevertheless, we reach the merits of this claim.

183 Wn.2d at 687-88. As the trial court noted, the instructions on reasonable use of force (WPICs 17.02 and 16.05) adequately conveyed Rife's theory of the case, which was that he acted in self-defense.

IX. REFUSAL TO CONSIDER EXCEPTIONAL SENTENCE

Rife argues, and the State concedes, that the trial court erred by failing to consider an exceptional sentence below the standard range. We accept the State's concession and remand to the sentencing court for a new sentencing hearing.

Generally, the length of a sentence is not appealable so long as it falls within the correct standard sentencing range. *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). When a sentencing court declines to grant a downward departure from the standard range, appellate review is limited to circumstances where the trial court entirely refused to exercise its discretion, or where it has relied on an impermissible basis for refusing to grant an exceptional sentence below the standard range. *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997).

We agree with Rife and the State, and we hold that the sentencing court entirely refused to exercise its discretion in considering an exceptional sentence below the standard range. The court opined that "as far as I'm concerned, [the SRA] takes the discretion away from me and every other trial judge . . . . [T]he court in essence is stuck, because I have to sentence within the requirements of the SRA." VRP (Jul. 17, 2014) at 21. These comments demonstrate that the trial court erroneously believed it did not have any discretion to sentence Rife below the standard range. Because the court refused to exercise its discretion, we reverse Rife's sentence and

No. 46638-4-II

remand for resentencing consistent with this opinion. *Garcia-Martinez*, 88 Wn. App. at 330.

We affirm Rife's convictions and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Lee, J.

Melnick, J.