166 P.3d 726 (2007)
STATE of Washington, Respondent,
v.
Jeffrey Michael FOSTER, Appellant.
No. 34953-1-II.
Court of Appeals of Washington, Division 2.
August 21, 2007.
*727 P. Grace Kingman, Attorney at Law, Tacoma, WA, for Respondent.
Reed Manley Benjamin Speir, Attorney at Law, University Place, WA, for Appellant.

PART PUBLISHED
VAN DEREN, A.C.J.
¶ 1 Jeffrey Michael Foster appeals his convictions for two counts of unlawful delivery of a controlled substance, methamphetamine, and one count of bail jumping, claiming that the evidence was insufficient to support his convictions. Foster also filed a Statement of Additional Grounds (SAG),[1] arguing that his trial counsel provided ineffective assistance on various grounds, including approving a stipulation to an out-of-state conviction that was either not comparable to a Washington State crime or washed-out of his offender score. Foster also claims that his appellate counsel provided ineffective assistance by failing to request the voir dire transcript. We affirm.

FACTS
¶ 2 On September 15, 2004, an undercover Puyallup Police Detective, Donald Gill, made contact with Louie Wilson and asked how he could buy drugs. Wilson, who did not know that Gill was a police officer, entered Gill's unmarked police car and directed him to an address in Puyallup, Washington. Gill waited in the car while Wilson bought the drugs.
*728 ¶ 3 Afterwards, Gill met with Michael Turner, a confidential informant (CI), Detective Sergeant Fralick, and Officer Michael Clark to plan a controlled drug buy at the same Puyallup residence. The officers searched Turner for drugs, weapons, or money, and provided him with $40 for the controlled buy. Gill directed him to the residence which was under officer surveillance. Turner contacted Wilson and the two emerged from the residence and walked a few blocks to the Cavalier Apartments. Wilson took Turner inside one of the apartments, where Turner met Michael Smith and asked to buy drugs. After a few minutes Foster entered the apartment and Turner watched him weigh 0.6 grams of methamphetamine on a digital scale. Smith gave Turner the methamphetamine in exchange for the $40 officers had provided. Turner left the apartment, met Clark in his car, stated he had made the purchase, and handed Clark a packet containing a substance that tested positive for methamphetamine. Clark took Turner to the police station, where the police again searched and interviewed him.
¶ 4 On September 29, Gill again met Turner, searched him, provided him with money and told him to perform a controlled buy in a trailer park in Puyallup, where Wilson, Foster, and a man named Auddie Hardy[2] lived. Turner first contacted Hardy, told him that he needed to get some "crank,"[3] and Hardy directed him to Foster's trailer. Report of Proceedings (RP)[4] at 99.
¶ 5 After hearing that Turner wanted to buy drugs, Foster told Crystal, a woman who also was in the trailer, to retrieve "the stuff" from a nearby parked car. RP at 100. When she returned, Foster gave Turner a baggie of white powder in exchange for $40. Turner returned to Gill's car with the drugs and Gill drove Turner back to the police station, where he was again searched and interviewed. The white powder Turner gave to Gill field-tested positive for methamphetamine and the Washington State Patrol Crime Laboratory (WSPCL) confirmed that it was methamphetamine. At trial, Foster denied involvement in these two drug transactions.
¶ 6 On October 7, police served search warrants on Foster's trailer and Smith's apartment. When officers arrested Smith, they found drug paraphernalia and two baggies containing methamphetamine in his apartment. After arresting Foster, officers searched the trailer and recovered "assorted drug paraphernalia, including needles and pipes." Clerk's Papers (CP) at 3. Smith admitted to the police that he sold methamphetamine and that he previously had bought it from Foster and Wilson. But at trial, Smith denied making these statements.
¶ 7 On October 8, the State charged Foster with two counts of unlawful delivery of methamphetamine, a controlled substance. The trial court issued, and Foster signed, a scheduling order for an omnibus hearing on October 26, 2004, but he failed to appear for medical reasons. The trial court issued a bench warrant for Foster's arrest, which it later quashed. The trial court issued, and Foster signed, another scheduling order for an omnibus hearing at 8:30 a.m. and a continuance hearing at 1:30 p.m., both to be held on January 5, 2005. Foster again failed to appear at the 8:30 a.m. omnibus hearing and the trial court phoned Foster twice but received no response. The trial court issued a bench warrant for Foster's arrest, which it also later quashed. Foster appeared at 1:30 p.m., but his attorney was not present. The trial court informed him that he should have attended the omnibus hearing in the morning and attempted to contact his counsel. The court then directed him to go immediately to one of the programs required as a condition of his release. The State amended the charging information to include two counts of bail jumping, one count for September 24, 2004, and one count for January 5, 2005.
*729 ¶ 8 On September 27, 2005, a jury found Foster guilty of both counts of unlawful delivery of a controlled substance and of one count of bail jumping for his failure to appear on January 5, 2005. Foster absconded from the courtroom following the jury verdict and was an absconder for approximately seven months. On June 2, 2006, Foster pleaded guilty to first degree escape for absconding from the court room on September 27, 2005, and the court sentenced him on both that case[5] and for his convictions for unlawful possession of a controlled substance and bail jumping.
¶ 9 At sentencing, Foster's defense attorney for the first degree escape charge told the trial court that she had reviewed the paperwork with Foster, including his stipulation to his criminal history.[6] The trial court engaged Foster in a colloquy to ascertain whether he understood his plea agreement on the escape charge. The sentencing court specifically discussed the standard range of confinement and asked whether the stipulation to his prior record was true and accurate. The sentencing court did not conduct a comparability analysis of Foster's alleged out-of-state prior convictions, did not conduct a wash-out analysis, and did not ask the State for evidence of the prior convictions.
¶ 10 After sentencing Foster for first degree escape, the trial court, without more discussion, sentenced him to two 84-month sentences, one for each count of unlawful delivery of a controlled substance, and 43 months for bail jumping, to be served concurrently, but all to be served consecutively to the first degree escape sentence.
¶ 11 Foster appeals.

ANALYSIS
I. Ineffective Assistance of Counsel  Stipulation to Comparability and No Wash-Out
¶ 12 Foster claims in his SAG that his trial counsel was ineffective because his counsel encouraged him to stipulate to an out-of-state conviction that was either not comparable to a Washington crime or that washed-out of his offender score, without requiring the State to present evidence of his criminal history. We ordered additional briefing on Foster's SAG argument that his counsel was ineffective by allowing him to stipulate to his criminal history that the State did not prove. Both parties, the State and the defendant, responded to our request.
A. Standard of Review
¶ 13 The federal and state constitutions guarantee a defendant effective assistance of counsel.[7] To prove ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient, i.e., that the representation "fell below an objective standard of reasonableness based on consideration of all the circumstances" and (2) that deficient performance prejudiced him, i.e., "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995). We determine whether counsel was competent based upon the entire trial record. McFarland, 127 Wash.2d at 335, 899 P.2d 1251.
¶ 14 We do not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient. Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Staten, 60 Wash.App. 163, 171, 802 P.2d 1384 (1991). We give great judicial deference to trial counsel's performance and we begin our analysis with a strong presumption that counsel was effective. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; *730 McFarland, 127 Wash.2d at 335, 899 P.2d 1251.
B. Effect of a Stipulation on State's Burden to Prove Criminal Record and Effective Assistance of Counsel
¶ 15 Foster argues that his trial counsel's performance was ineffective because his counsel allowed him to sign a "stipulation on prior record and offender score" in which he stipulated that he had a prior Kansas conviction for attempted aggravated burglary, that the Kansas conviction was comparable to a class B felony, and that the Kansas conviction did not wash-out of his offender score. SAG at 6-8. He does not argue that the Kansas conviction does not exist, but, rather, that his counsel was ineffective for allowing him to stipulate to it. In his SAG, he concludes that his offender score should be reduced by one point because the State did not prove that this prior conviction was comparable or did not wash-out.
¶ 16 In the additional briefing, the parties agree that the trial court record is insufficient to determine whether Foster's trial counsel's performance was deficient for allowing Foster to stipulate and if the stipulation prejudiced Foster. Foster contends, though, in his supplemental brief, that he may raise the miscalculation of his offender score for the first time on appeal, and, because the basis of his ineffective assistance of counsel claim is that his counsel failed to challenge comparability and wash-out, it is necessary to examine whether the evidence the State presented established comparability or wash-out. In addition, Foster argues that because the record is insufficient, we should remand the case for resentencing and allow the State to present evidence to prove Foster's criminal history. The State responds that Foster's stipulation is sufficient and that it does not need to provide the trial court with additional evidence to prove his criminal history. We agree with the State.[8]
¶ 17 When determining the defendant's sentence, the trial court may rely on admitted information from the trial record or at the time of sentencing. Former RCW 9.94A.530(2) (2004).[9] But "a sentence based on a miscalculated upward offender score is in excess of statutory authority and generally may be challenged at any time." In re Pers. Restraint of Cadwallader, 155 Wash.2d 867, 874, 123 P.3d 456 (2005). See generally In re Pers. Restraint Petition of Goodwin, 146 Wash.2d 861, 873-876, 50 P.3d 618 (2002) (discussing certain cases in which waiver may be found); State v. Mendoza, ___ Wash.App. ___, 162 P.3d 439 (2007) (outlining the case law history of this proposition). In other words, "[t]he defendant cannot agree to a sentence in excess of that which is statutorily authorized." Cadwallader, 155 Wash.2d at 874, 123 P.3d 456. But "[w]aiver of a challenge to an allegedly invalid sentence `can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion. . . . [W]aiver may be found where a defendant stipulates to incorrect facts.'" Cadwallader, 155 Wash.2d at 875, 123 P.3d 456 (citing Goodwin, 146 Wash.2d at 874, 50 P.3d 618).
¶ 18 In State v. Ross, Ross's counsel acknowledged that an out-of-state prior conviction was properly included in Ross's offender score. 152 Wash.2d 220, 225, 95 P.3d 1225 (2004). On appeal, Ross argued that the sentencing court improperly calculated his offender score because the State failed to prove that his out-of-state conviction was comparable to a Washington crime. Ross, 152 Wash.2d at 225, 95 P.3d 1225. But because Ross had already been released from confinement and his appeal was moot, our Supreme Court considered two identical claims by two other defendants.[10]Ross, 152 Wash.2d at 228-229, 95 P.3d 1225.
*731 ¶ 19 In addressing the remaining two claims, the Court held that a defendant's affirmative acknowledgement[11] of the "existence and comparability" of out-of-state convictions need not be supported by further proof and can be included in the defendant's offender score at the time of sentencing. Ross, 152 Wash.2d at 233, 95 P.3d 1225; see also Ford, 137 Wash.2d at 482-83, 973 P.2d 452; State v. Huff, 119 Wash.App. 367, 372-73, 80 P.3d 633 (2003) (defendant's stipulation sufficient to establish prior criminal history and defendant could not raise the issue on direct appeal). Foster's argument is substantially similar to the defendants' argument rejected in Ross.
¶ 20 Foster's stipulation to the comparability of the Kansas conviction to a Washington class B felony and to the fact that it had not washed out is an admission of its existence (which Foster does not challenge), its comparability, and its continuing viability for inclusion in his offender score. The stipulation here relieved the State of its burden of proof on these facts.[12]
¶ 21 In a recent Supreme Court case, In re Pers. Restraint of Shale, the Court addressed a defendant's allegation that the trial court had miscalculated his offender score by not treating some of his crimes as the "same criminal conduct" for purposes of calculating the offender score. Shale, 160 Wash.2d 489, 494, 158 P.3d 588, 590 (2007). Relying on Goodwin and State v. Nitsch, 100 Wash.App. 512, 997 P.2d 1000 (2000), the Court concluded that Shale agreed to his offender score as part of a plea bargain and did not challenge the computation of the offender score. Shale, 160 Wash.2d at 494-495, 158 P.3d 588. The Court noted: "While we have recognized and granted relief from plea agreements in limited circumstances, those cases involved pleas, convictions, or sentences that were invalid on the face of the judgment and sentence." In Shale, there was no apparent invalidity and, thus, the Court affirmed his sentence without remanding for further hearings on his offender score calculation. Shale, 160 Wash.2d at 496, 158 P.3d 588.
¶ 22 As a threshold matter, Foster must show "that an error of fact or law exists within the four corners of his judgment and sentence" to challenge the inclusion of the Kansas conviction in his offender score now. Ross, 152 Wash.2d at 231, 95 P.3d 1225. Here, it is undisputed that, at sentencing, the State did not provide copies of the judgment and sentence for the Kansas conviction, did not provide copies of the applicable Kansas statutes, nor did it address whether the Kansas conviction washed out in light of Foster's subsequent criminal history, relying on Foster's stipulation. The stipulation recited that Foster's prior Kansas conviction was comparable to a Washington class B felony and that it did not wash-out.[13]
*732 ¶ 23 On appeal, Foster fails to show how the trial court committed any arguable factual or legal error by including his prior Kansas conviction in his offender score. He provided no analysis of the comparability of the Kansas crime to a Washington felony nor does he analyze how it might have washed-out. As in Shale and Ross, Foster points to no apparent invalidity on the face of the judgment and sentence and falls short in his attempt to assert an incorrect offender score, which underlies his claim of ineffective assistance of counsel. Therefore, we do not remand for resentencing nor do we hold that his counsel was ineffective in providing Foster's stipulation to the court for sentencing purposes.
¶ 24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER and HUNT, JJ.
NOTES
[1] RAP 10.10(a) provides: "A defendant/appellant in a review of a criminal case may file a pro se statement of additional grounds for review to identify and discuss those matters which the defendant/appellant believes have not been adequately addressed by the brief filed by the defendant/appellant's counsel."
[2] The appellate record is unclear whether this person's first name is Auddie or Auggie and whether his last name is Murphy or Hardy. We refer to him as "Auddie Hardy."
[3] "Crank" is a street name for methamphetamine. RP at 100.
[4] There are six volumes of the report of proceedings. Volumes two through five are a record of the trial proceedings and are consecutively numbered. All references to the report of proceedings are to these volumes.
[5] See Pierce County Cause No. 05-1-04786-2.
[6] It appears that the stipulation used in Cause No. 05-1-04786-2 was the same stipulation that Foster addresses in his SAG.
[7] The United States Constitution provides: "In all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." U.S. Const. amend. VI. The Washington State Constitution provides: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel[.]" Wash. Const. art. 1, § 22.
[8] The State also argues that these issues are best raised in a personal restraint petition (PRP). We disagree with the State on this point because we believe the issue can be addressed on appeal.
[9] Former RCW 9.94A.530(2) (2004) provides: "In determining any sentence, the trial court may rely on no more information than . . . admitted, acknowledged, or proved in a trial or at the time of sentencing."
[10] The other two defendants were Russell J. Hunter, who pleaded guilty to second degree attempted robbery and disputed the comparability of two out-of-state convictions, and Donald J. Legrone, who a jury found guilty of unlawful possession of cocaine with intent to deliver and argued that the court should have counted his two prior out-of-state convictions as only one prior conviction in his offender score. Ross, 152 Wash.2d at 226-227, 95 P.3d 1225.
[11] An "[a]cknowledgement includes not objecting to information stated in the presentence reports." RCW 9.94A.530(2).
[12] Our Supreme Court recently addressed a similar issue in State v. Thiefault, 160 Wash.2d 409, 158 P.3d 580 (2007). The trial court determined that certain foreign offenses were comparable to Washington State offenses. Thiefault appealed on other grounds and Division One of this court reversed one of his convictions and remanded for resentencing. On remand, a new attorney represented Thiefault at resentencing and did not object to the earlier court's comparability determination. Thiefault, 160 Wash.2d at 413, 158 P.3d 580. Thiefault appealed, arguing to our Supreme Court, that his trial counsel was ineffective for not objecting to the trial court's previous comparability analysis. Thiefault, 160 Wash.2d at 414, 158 P.3d 580. The Court remanded to the superior court to conduct a factual comparability analysis of the out-of-state conviction and ordered the trial court, "[i]n making such a determination, [to] rely on only those facts that Thiefault stipulated or admitted to or those that were proved beyond a reasonable doubt." Thiefault, 160 Wash.2d at 420, 158 P.3d 580.

But here, the trial court did not conduct a comparability analysis because Foster admitted in his stipulation that the Kansas criminal statute was comparable to a Washington class B felony.
[13] The stipulation also listed the date of sentence for the attempted aggravated burglary charge as "10/28/95," but the date of the crime as "03/25/85." CP at 66. Despite being questioned about the apparent discrepancy at oral argument, the parties did not clarify why there was a ten-year gap between the commission of the crime and the sentencing.