IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35070-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEVIN JOHN HUBBARD, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Kevin Hubbard appeals his convictions for second degree rape of a child, second degree child molestation, and distribution of a controlled substance, with sexual motivation, to a person under 18. He raises claims regarding the sufficiency of the evidence and prosecutorial misconduct during closing argument. We affirm.

FACTS[1]

S.L.[2] was born in August 1998. Mr. Hubbard and S.L.'s mother became romantically involved when S.L. was a young child. Mr. Hubbard purported to be a

---

[1] The factual statement is taken from trial testimony.

[2] To protect the privacy interests of S.L., a minor, we use her initials throughout this opinion. General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber= 2012_001&div=III.

father figure to S.L. and her siblings. But once S.L. reached adolescence, Mr. Hubbard began a long-standing practice of sexual assault.

S.L. recalled a specific incidence of assault that occurred in the summer of 2012, when she was 13 years old. The incident stood out in S.L.'s memory because it involved Mr. Hubbard introducing S.L. to marijuana. Mr. Hubbard shared some marijuana with S.L. while the two were at a park. Mr. Hubbard made some sexually suggestive comments to S.L. and then, during the car ride home from the park, Mr. Hubbard groped S.L.'s legs and vaginal area. S.L. was fully clothed at the time. Once back at the family home, Mr. Hubbard pulled down S.L.'s pants and engaged S.L. in sexual intercourse as S.L. was laying on a living room couch.

For Mr. Hubbard, the practice of supplying S.L. with drugs and then committing sexual assault became "routine." 1 Report of Proceedings (RP) (Nov. 30, 2016) at 194; 2 RP (Dec. 1, 2016) at 213. The primary drug used by Mr. Hubbard was marijuana. But he also used lysergic acid diethylamide (LSD). As explained by S.L., with one exception, LSD and sex always went "hand in hand." 2 RP (Nov. 30, 2016) at 206.

Mr. Hubbard's last act of sexual assault occurred in 2014, when S.L. was 15 years old. Mr. Hubbard engaged S.L. in sexual intercourse while the two were seated on a couch made from a converted car seat.

A few days after Mr. Hubbard's last assault, S.L. told her mother and the police

about what had been happening. An investigation uncovered Mr. Hubbard's DNA[3] on a

pair of S.L.'s underwear. In addition, DNA from both S.L. and Mr. Hubbard was

discovered on the converted couch, the place where S.L. described the last act of assault

taking place.

At trial, Mr. Hubbard took the stand and testified in his defense. He admitted to

having sexual intercourse with S.L. more than once. But he claimed it happened only

after S.L. turned 15. Mr. Hubbard denied consuming LSD with S.L. or providing her

with the drug.

Under the court's instructions, the jury was required to find Mr. Hubbard

committed second degree rape and molestation in 2012, prior to S.L. turning 14. The

third degree rape charge required the jury to find Mr. Hubbard assaulted S.L. at some

point prior to S.L.'s 16th birthday in August 2014.

During closing argument, the prosecutor addressed the third degree rape charge

and made the following comments:

> Now Count III [regarding third degree rape] is going to be easy,
> *because we all know what dog and pony show you saw today.*
> > [Defense Counsel]: Objection.
> > [Prosecutor]: *Anybody buying it?*
> > THE COURT: It's closing. Go ahead.

---

[3] Deoxyribonucleic acid.

3

> [Prosecutor]: *Anybody buying it?  Anybody buying it?*  All of a sudden now he's just starting to have sex with her when she's 15.  Rape of a child in the third degree.  I only charged him with one count.  He admitted to two.  But as we all know, there was many other times that he did this count.  And she talked about multiple, multiple acts.

2 RP (Dec. 1, 2016) at 309 (emphasis added).

When addressing Mr. Hubbard's testimony again later in closing, the prosecutor stated, "Did you believe this defendant over here when he came up there?  *Were you buying what he was selling?*  Did you think he was credible?"  *Id*. at 318 (emphasis added).  The prosecutor then went on to argue reasons, based on the evidence, that the jury should find Mr. Hubbard was not credible.

At one point, the prosecutor addressed the jury as if she were vocalizing Mr. Hubbard's thoughts:

> Who is the only person in this courtroom that has a personal interest in this case?  Ding ding ding.  [Mr. Hubbard]'s the only one.  Do you think he has motive to be dishonest with you when he got up there?  Do you think he's got a motive to be dishonest with you?  He listened to all the evidence.  *"Ooh, boy.  That DNA.  This is looking bad.  I'm going to have to admit to that rape III.  Oh, wait.  My wife came and testified and said, 'I watched you—' oh, I—that's looking bad.*[4]  *I'm—oh.  Oh, but I didn't do that.  I didn't touch her when she was 13.  Oh, no, no, no."  Are you buying what he's selling?  Don't give in to that.*  The fact that he has a motive to be dishonest with you is something you can take into consideration regarding his credibility, regarding whether you believe him.

---

[4] S.L.'s mother testified at trial and described an occasion when she walked in on Mr. Hubbard and S.L. engaged in intercourse.

*Id*. at 324 (emphasis added).

A jury found Mr. Hubbard guilty of second degree rape of a child (occurring in 2012), second degree child molestation (occurring in 2012), third degree rape of a child (occurring in 2015), and distribution of a controlled substance, with sexual motivation, to a person under 18. Mr. Hubbard appeals. He has also filed a statement of additional grounds for review.

ANALYSIS

*Sufficiency of evidence*

Our inquiry in a sufficiency challenge is limited. We do not reweigh evidence or substitute our judgment for that of the trier of fact. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, we consider the evidence in the light most favorable to the State and ask whether "any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). As explained below, the trial evidence readily met this standard.

*Rape and molestation convictions 2012 offense conduct*

Mr. Hubbard contends the evidence cannot support his convictions for second degree child rape and molestation because the State did not present competent evidence that S.L. was assaulted in 2012. Although S.L. testified the assault took place the summer

5

after she was in the seventh grade, which would have been 2012, Mr. Hubbard claims this testimony was patently incredible. Mr. Hubbard points to S.L.'s testimony that a kitchen table was present in the family home on the date of the 2012 assault. Yet testimony from S.L.'s mother indicated the table was purchased in 2014. According to Mr. Hubbard, this discrepancy between S.L.'s testimony and other evidence fully refuted S.L.'s claim about the timeline of events.

Mr. Hubbard's argument amounts to nothing more than an attack on S.L.'s credibility. It is inconsistent with the applicable standard of review. A rational jury could have found S.L. was mistaken as to the presence of the table, but nevertheless accurate as to the date of the assault.[5] Alternatively, the jury could have found S.L.'s testimony was entirely accurate and that her mother had been mistaken about when the table was purchased.[6] We will not second-guess the jury's reasoning on appeal. Sufficient evidence supports the jury's guilty verdicts.

---

[5] S.L. did not identify the table as something that played a key role in her memory. Instead, she anchored the timing of the 2012 assault around her birthday and her year in school.

[6] When asked when she purchased the table, S.L.'s mother said she was "not sure exactly." 1 RP (Nov. 30, 2016) at 73. She estimated the purchase was two years prior to trial, which would have been 2014. *Id.*

*Sexual motivation enhancement*

S.L.'s testimony made clear Mr. Hubbard regularly shared drugs with her prior to engaging in sexually assaultive conduct. While Mr. Hubbard's drug of choice appeared to have been marijuana, S.L. also testified that Mr. Hubbard used LSD and that LSD and sex went "hand in hand" with only one exception. 2 RP (Nov. 30, 2016) at 206. S.L.'s testimony provided a sufficient basis for the jury to find Mr. Hubbard provided drugs to her for the purpose of sexual gratification, as required by RCW 9.94A.030(48).

*Prosecutorial misconduct*

Allegations of prosecutorial misconduct are reviewed for abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014); *State v. Brett*, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995). A defendant bears the burden of showing that the prosecutor's comments are both improper and prejudicial. *Lindsay*, 180 Wn.2d at 430; *State v. Warren*, 165 Wn.2d 17, 26, 195 P.3d 940 (2008). Mr. Hubbard argues the prosecutor impugned the integrity of defense counsel and shifted the burden of proof through her "dog and pony show" remark. 2 RP (Dec. 1, 2016) at 309.[7]

---

[7] Mr. Hubbard does not argue that the prosecutor's comments impinged on his jury trial rights by suggesting he tailored his testimony to fit the evidence at trial. *See State v. Martin*, 171 Wn.2d 521, 252 P.3d 872 (2011).

While the prosecutor's tone was not entirely professional, Mr. Hubbard has not

established a basis for reversing his conviction. The prosecutor's remarks were aimed at

Mr. Hubbard, not defense counsel. *Cf. Lindsay*, 180 Wn.2d at 431-32 (prosecutorial

misconduct to impugn the role of defense counsel or counsel's integrity). Because Mr.

Hubbard testified, the prosecutor was entitled to point out deficiencies in Mr. Hubbard's

testimony. *State v. Hilton*, 164 Wn. App. 81, 97-98, 261 P.3d 683 (2011). By referencing

a "dog and pony show" and questioning whether the jury was "buying" Mr. Hubbard's

testimony, 2 RP (Dec. 1, 2016) at 309, the prosecutor suggested the jury should find Mr.

Hubbard was not credible. However, the prosecutor did not indicate the jury's verdict

should rest entirely on this assessment. Instead, the prosecutor focused on why the jury

should find S.L. more credible than Mr. Hubbard. This line of reasoning was proper.

*State v. Jackson*, 150 Wn. App. 877, 886, 209 P.3d 553 (2009).

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Hubbard raises three arguments in his statement of additional grounds

for review: (1) ineffective assistance of counsel, (2) improper arraignment, and

(3) prosecutorial misconduct. Each is addressed in turn.

### *Ineffective assistance of counsel*

Mr. Hubbard argues defense counsel was ineffective for: (1) allowing in

8

evidence of his previous convictions, (2) failing to conduct an adequate investigation, and (3) incorrectly telling the trial court he entered a not guilty plea when there was never any arraignment. To demonstrate ineffective assistance, Mr. Hubbard must show deficient performance and prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If either is lacking, the ineffective assistance claim fails. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

As to the first argument, S.L.'s mother testified Mr. Hubbard had spent some time in jail, which was a violation of an order on a motion in limine. The trial court asked defense counsel if there was going to be a motion for a mistrial, but counsel declined to seek one. Counsel explained that this decision was based on trial strategy. We will not second-guess that strategy in the context of an ineffective assistance claim.

For his second argument, Mr. Hubbard cites to two pages in the record without any explanation for how these pages show an inadequate investigation by defense counsel. Full consideration of this argument appears to require knowledge of facts and evidence that are not part of the appellate record. The proper avenue for presenting such facts and evidence is through a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

9

Mr. Hubbard last argues defense counsel misrepresented the facts by stating he had pleaded not guilty to the charges in the first amended information. Even assuming this to be true, Mr. Hubbard does not attempt to explain how he was prejudiced. Further, as discussed below, Mr. Hubbard has waived any arguments relating to his lack of formal arraignment on the amended information.

*Lack of arraignment*

Mr. Hubbard next argues his due process rights were violated because he was never properly arraigned on the amended information. He asserts this prevented him from adequately preparing his defense. Mr. Hubbard did not raise this objection in the trial court, did not contest defense counsel's statement he pleaded not guilty to the amended information, and had a full trial on the merits. Through his actions, Mr. Hubbard has waived his right to a formal arraignment on the amended information, and there was no due process violation. *State v. Anderson*, 12 Wn. App. 171, 173, 528 P.2d 1003 (1974); *State v. Graeber*, 46 Wn.2d 602, 605-06, 283 P.2d 974 (1955).

*Prosecutorial misconduct*

Mr. Hubbard last argues it was misconduct for the prosecutor to continue to draw attention to his marijuana grow operation after counts V and VI were dismissed mid-trial. We disagree. The marijuana evidence was relevant to show the general link between

10

drugs and Mr. Hubbard's assaultive conduct. It was not utilized as bad character evidence. In closing, the prosecutor clearly told the jury the marijuana charges were no longer before it. The prosecutor then focused her argument on the LSD use. The prosecutor never pushed for a conviction based on the marijuana. Mr. Hubbard has not asserted a valid claim of misconduct.

## APPELLATE COSTS

Mr. Hubbard's motion to deny appellate costs is deferred to the court commissioner should the State seek costs.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Fearing, C.J.                          Siddoway, J.

11