# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59100-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DAVID SCOTT MILLIRON, | |
| Appellant. | |

CHE, J. — David Milliron appeals his convictions for first degree assault while armed with a firearm and drive-by shooting.

At an intersection, Milliron shot at Matthew Lubov and drove away. Later, police found Milliron in Oregon. In separate incidents around the time of the crime, Milliron shot two people in Oregon. The trial court admitted the evidence of the other crimes, finding, among other things, that the shootings were relevant to prove that Milliron intended to inflict great bodily harm in this case.

Milliron argues that the trial court erred by admitting irrelevant, cumulative, and overly prejudicial evidence of his other crimes under ER 404(b) and that his counsel was ineffective for failing to move to exclude testimony that Milliron said an offensive racial slur during one of his other crimes.

We hold that any evidentiary error was harmless and that Milliron's ineffective assistance of counsel claim fails.

Accordingly, we affirm Milliron's convictions for first degree assault while armed with a firearm and drive-by shooting.

FACTS

I. BACKGROUND

On the evening of June 2, 2021, Lubov was driving home in his truck when he came to a four-way stop. To Lubov's right, a sedan was already stopped at the intersection. When Lubov stopped, the driver of the sedan flashed his headlights, and Lubov put his hand up. The sedan went through the intersection, performed a U-turn, and stopped next to Lubov. After a verbal exchange between the drivers, the sedan slowly moved forward when its driver put a handgun out the window and shot at Lubov. The sedan pulled forward 10 to 20 feet, stopped, and then shot at Lubov again. Lubov ducked under his dashboard and called the police after he saw the sedan speed away. Neighbors heard the gunshots, and a video that captured the audio of the shots was admitted at trial.

When police arrived, they found that three bullets had struck Lubov's truck. One bullet struck the passenger side fender and two struck the front bumper, but none entered the cab of the truck. Officers found the sedan parked in a nearby neighborhood. The sedan was unoccupied, but the hood was warm. Officers did not locate the driver.

While searching the area, officers found a shell casing in the middle of the road, two shell casings inside the sedan, two bullet fragments, and a wallet on the ground approximately 300 to 400 feet from the sedan. The wallet contained, among other things, Milliron's social security card and driver's license. At the time of the incident, Lubov got a "good look" at the driver of

the sedan. 2 Rept. of Proc. (RP) (Jun. 8, 2023) at 399. Later, Lubov identified Milliron as the shooter from a photo montage.

Law enforcement eventually located Milliron in Portland, Oregon. Police observed Milliron enter a recreational vehicle (RV), remain inside for several hours, and eventually exit the RV. Pursuant to a search warrant for the RV, police found a Ruger 9 mm handgun. Milliron was prohibited from possessing firearms due to prior convictions.

Forensic testing of the handgun from the RV and the shell casings and bullet fragments from the crime scene showed that all three shell casings and at least one of the bullet fragments were fired from the handgun found in the RV.

The State charged Milliron by amended information with first degree assault while armed with a firearm and drive-by shooting.[1]

## II. ER 404(b) EVIDENCE

A.   *ER 404(b) Hearing*

The State moved to admit evidence of two other crimes involving Milliron under ER 404(b), the shootings of Stacey Bryant on May 14, 2021, and of Daniel Witty on June 10, 2021, in Portland, Oregon. In the Bryant incident, Milliron was driving past Bryant when he stopped ahead of Bryant's vehicle and shot him. In the Witty incident, Witty observed Milliron breaking the windows of his car and after confronting Milliron, Milliron shot Witty in the hip. Milliron argued to exclude these incidents.

---

[1] The State also charged Milliron with first degree and second degree unlawful possession of a firearm. Milliron does not challenge these convictions on appeal.

The State argued that the Bryant and Witty incidents were admissible to show the intent element for the first degree assault charge, arguing that "these two incidents are evidence that [Milliron] did intend to hit Mr. Lubov when he shot at him just as he had done in the other two incidents, all within a 30 day period." 1 RP (May 26, 2023) at 111.

The State further argued that the Bryant incident was admissible to show "knowledge," that Milliron "kn[ew] that shooting out of a car could cause death or serious physical injury" for purposes of establishing recklessness for the drive-by shooting charge. 1 RP (May 26, 2023) at 111. "So the fact that [Milliron] did cause serious injury two weeks prior by engaging in the exact same conduct, [ ] should render the [Bryant incident] admissible for purposes of knowledge." 1 RP (May 26, 2023) at 111-12.

To show the trial court by a preponderance of the evidence that Milliron committed the two crimes, the State offered a ten-count Oregon indictment and the resulting judgment, which arose from both incidents. In the judgment, Milliron pleaded guilty to counts 3, 5, and 8—second degree assault with a firearm against Bryant, unlawful use of a weapon with a firearm against Bryant's passenger, and second degree assault with a firearm against Witty.[2]

The State argued that the probative value of the other crimes was not outweighed by the prejudicial effect "particularly since [the State needed] to show that [Milliron] intended to inflict

---

[2] The Oregon indictment listed count 3, second degree assault with a firearm, as a crime against Bryant that occurred on or about June 2, 2021. The judgment reflects the same date. The State argued that this was likely a scrivener's error, as June 2 was the date of the crime in this case on appeal. Defense counsel responded that they did not know if it was a scrivener's error and that there was "not enough evidence to suggest" that Milliron pleaded guilty to shooting Bryant. In order to show that Milliron was the shooter in both Oregon crimes, the State also offered a jail recording, made after the Lubov incident and the two Oregon crimes, in which Milliron admitted to his mother that he was the shooter in both Oregon crimes. Defense counsel objected to the jail recording.

great bodily injury when he didn't actually end up hitting . . . Mr. Lubov." 1 RP (May 26, 2023) at 119.

The State sought a limiting instruction. The first instruction stated in relevant part that evidence of the Bryant incident "may only be considered for the purpose of showing [Milliron's] intent and knowledge. You may not consider it for any other purpose." Clerk's Papers (CP) at 140. The next instruction stated in relevant part that evidence of the Witty incident "may only be considered for the purpose of showing [Milliron's] intent. You may not consider it for any other purpose." CP at 141.

Milliron primarily argued that the State was making a "propensity argument," that the evidence of the other crimes was not demonstrative of whether he shot Lubov in the current case, and that the prejudicial effect of the evidence outweighed any probative value. 1 RP (May 26, 2023) at 123. Regarding the Bryant incident, Milliron argued that he "did not plead guilty to assaulting or shooting Mr. Bryant" on May 14, only to having unlawfully possessed a weapon. CP at 57. As for the Witty incident, Milliron asserted that there was a distinct factual difference between that incident and the present crime, namely, that Milliron was not inside a vehicle when he shot Witty.

The trial court concluded the other crimes evidence was admissible, stating that "you have these two other shootings really in close proximity to this one that are kind of remarkably similar and [ ] the idea that it was somehow in self-defense or . . . [Milliron] just meant to scare them, I think this does go a long ways to negate that." 1 RP (May 26, 2023) at 125. The court

found that the State proved by a preponderance that Milliron committed the two crimes.[3] The

trial court gave the two limiting instructions related to the other crimes evidence.

B.     *Written Conclusions of Law*

The trial court issued written findings of fact and conclusions of law based upon the facts

above, concluding, among other things, that

III.    [The Bryant incident] is relevant to prove that the defendant intended to inflict great bodily harm against Mr. Lubov on June 2, 2021 and to rebut the defendant's claim of self-defense.

IV.    [The Bryant incident] is relevant to prove the defendant knew that shooting a firearm on June 2, 2021 at Mr. Lubov was likely to inflict great bodily harm to Mr. Lubov.

V.     [The Witty incident] is relevant to prove the defendant intended to inflict great bodily harm against Mr. Lubov on June 2, 2021 and to rebut the defendant's claim of self-defense.

VI.    The probative value of [the Bryant and Witty incidents] is not substantially outweighed by the danger of unfair prejudice.

VII.    Accordingly, [the Bryant and Witty incidents] are admissible at trial under ER 404(6) for the purposes stated in paragraphs 3, 4, and 5.

CP at 103-04. [4]

---

[3] Milliron asserts that the trial court's reliance on *State v. Lough*, 125 Wn.2d 847, 889 P.2d 487 (1995) was misplaced. But the trial court did not rely on *Lough*. Rather, it noted that though *Lough* was a "prime case," it went "really more to a common scheme or plan." 1 RP (May 26, 2023) at 125.

[4] At trial, Milliron did not claim that he acted in self-defense. Thus, the State did not rely on the other crimes evidence to rebut a self-defense claim.

## III. TRIAL

Witnesses testified consistently with the information above.

A.      *Evidence of Other Crimes*

Over Milliron's ER 404(b) objections, the State presented witness testimonies regarding the Bryant and Witty incidents.

Savannah Potter testified that on May 14, 2021, she and her boyfriend Bryant were delivering newspapers from their car when they began having car problems, causing them to drive slower.  Bryant was driving, and Potter was in the front passenger seat.  A car came behind them, Bryant pulled over to let the car go by, and while the car passed by, the driver said, "Shut up, N[**]ger."  2 RP (June 8, 2023) at 581.  The car drove ahead of Bryant for a few minutes before stopping, and Potter then saw an arm reach out of the driver's side window and shoot. Bryant was shot in the forehead, and he "fell limp and landed in [Potter's] lap."  2 RP (June 8, 2023) at 579.

Next, Witty testified that on June 9, 2021, he witnessed a man and a woman breaking the windows of his vehicle.  Witty exclaimed, "[W]hat the f[**]k," to which the man yelled at Witty to back off and shot at him three times.  2 RP (June 9, 2023) at 584.  One of the rounds struck Witty in the hip.  Witty called the police and was taken to the hospital.[5]

---

[5] At the conclusion of Witty's testimony, defense counsel again moved for a mistrial based on ER 404(b), arguing that Potter and Witty's testimonies were going to "enflame the prejudice of the jury" and were "propensity evidence" against Milliron.  2 RP (June 8, 2023) at 588.  The trial court denied the motion.  Milliron does not assign error to the trial court's denial of his motion for mistrial.

The trial court also allowed the State to introduce into evidence the redacted Oregon indictment,[6] resulting judgment, and Milliron's phone call from jail that occurred on June 13 in which he admitted to committing the Bryant and Witty shootings. The State asserted that it was introducing the indictment and judgment "only to show that [Milliron] was the shooter in those two [incidents] because neither victim [was] able to identify" the shooter while testifying. 2 RP (June 9, 2023) at 625. In addition, due to the apparent scrivener's error regarding the date of count 3 in the judgment, the State anticipated that Milliron would argue his conviction did not arise from shooting Bryant on May 14. Therefore, the State argued that it needed to introduce Milliron's phone call from jail "to show identity, particularly for the Stacey Bryant shooting." 2 RP (June 9, 2023) at 626. Milliron objected, arguing that because the indictment and judgment was admitted, there was "no need to play the jail phone call at all." 2 RP (June 8, 2023) at 571. Milliron argued that the phone call was cumulative and prejudicial.

The trial court found that the phone call was relevant evidence because it established Milliron's knowledge of the consequences of his actions. The State played a redacted version of the phone call for the jury.

B.      *Milliron's Theory of the Case and Closing Argument*

During opening statement, Milliron suggested that because the sedan was right next to Lubov's truck, it would have been a "pretty easy shot" for the driver of the sedan to cause great bodily harm to Lubov if the driver had intended to do so. 2 RP (June 7, 2023) at 346.

---

[6] It appears that the Oregon indictment and resulting judgment were redacted to show only counts 3 and 8, that Milliron "unlawfully and intentionally and knowingly cause[d] physical injury" to Stacy Bryant and Daniel Witty "by means of a deadly and dangerous weapon." 2 RP (June 8, 2023) at 566.

8

Throughout trial, Milliron questioned witnesses regarding where the bullets hit Lubov's truck and whether any bullets went into the cab of his vehicle.

Milliron moved to dismiss his case for "lack of prosecution," arguing, among other things, that the State had not proved intent to commit great bodily injury for his first degree assault charge. 2 RP (June 9, 2023) at 686.

The State argued,

> [C]ertainly there is sufficient information that the Defendant intended to inflict great bodily injury. [H]e shot at the vehicle that the alleged victim was in[.] [T]hankfully he did not hit the alleged victim but he struck that vehicle multiple times. . . . [T]here's ample arguments being made and inferences that the jury can draw.
>     And then in conjunction with the 404(b) evidence . . . to prove that he intended to inflict great bodily injury on Mr. Lubov.

2 RP (June 9, 2023) at 688-89.

The trial court denied Milliron's motion, finding, among other things, that "shooting into a vehicle I believe the inference the jury or trier of fact could draw is that is the intent to commit great bodily harm." 2 RP (June 9, 2023) at 690.

During closing argument, the State told the jury that it needed to show Milliron intended to inflict great bodily injury, stating "[s]o there's a number of things that you can consider there . . . obviously [Milliron is] firing at the car. We know he's firing at the car because he actually impacts the car three times." 2 RP (June 12, 2023) at 771. Consistent with the trial court's ER 404(b) ruling, the State then said that the jury could consider the Bryant and Witty incidents "for purposes of intent" and the Bryant incident to establish knowledge for the drive-by shooting charge. 2 RP (June 12, 2023) at 771. In regards to knowledge, the State asserted in relevant part:

So we have evidence that the Defendant knew that shooting out of a vehicle in this manner could cause great bodily injury because he had just done it two weeks prior. He just shot somebody in the head out of his vehicle in this manner two weeks prior so of course he knew.

. . . .

That shows that he knew that shooting out of motor vehicle in that matter could result in great bodily injury.

2 RP at (June 12, 2023) 774-75.  The State concluded its argument by stating, "We don't know where that impact landed. The Defendant in this case intended to inflict great bodily harm on Mr. Lubov just as he did with Stacey Bryant and just as he did with Daniel Witty." 2 RP (June 12, 2023) at 801.

Defense counsel primarily argued that if Milliron was indeed the shooter, he nonetheless lacked the specific intent necessary to support a conviction for first degree assault because "[n]one of [the bullets] went in the cab of the truck." 2 RP (June 12, 2023) at 792-93. The "lack of being able to hit somebody side-by-side with [you]" showed a lack of intent to cause great bodily harm. 2 RP (June 12, 2023) at 793.

The jury found Milliron guilty as charged.

Milliron appeals.

## ANALYSIS

### I.  ER 404(b) EVIDENCE

Milliron contends that the trial court abused its discretion by admitting evidence under ER 404(b) that he shot Bryant and Witty. Milliron asserts that this evidence was improper propensity evidence and that the trial court failed to correctly balance the probative value of this evidence against its prejudicial effect. Specifically, Milliron argues that the Oregon crimes were not admissible to prove that he had the required intent here for either the first degree assault or

10

drive-by shooting charges. We decline to decide this argument. Even presuming without deciding that the trial court erred in admitting the other crimes evidence, including the phone call, the analysis is subject to nonconstitutional harmless error review, and any evidentiary error here is harmless.

A.      *Legal Principles*

We review a trial court's decision to admit or exclude evidence under ER 404(b) for an abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). A trial court abuses its discretion when its decision is unreasonable or based on untenable grounds or reasons. *State v. Arredondo*, 188 Wn.2d 244, 256, 394 P.3d 348 (2017).

Under ER 404(b), evidence of a defendant's other crimes, wrongs, or acts is not admissible to prove their character and show that they acted in conformity with that character. ER 404(b); *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). While ER 404(b) bars evidence of other misconduct to show a defendant's propensity to commit the crime charged, such evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).

Before a trial court admits evidence under ER 404(b), it must first "(1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence." *Fisher*, 165 Wn.2d at 745. The trial court must conduct this analysis on the record, and if it admits the evidence, it must also give a limiting instruction. *Arredondo*, 188 Wn.2d at 257. The trial court

should exclude the evidence "[i]n doubtful cases." *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

"[P]rior misconduct evidence is only necessary to prove intent when intent is at issue or when proof of the doing of the charged act does not itself conclusively establish intent." *State v. Powell*, 126 Wn.2d 244, 262, 893 P.2d 615 (1995). Proof of doing an act as well as other evidence presented may implicitly demonstrate intent. *Id*.

When the State offers evidence of prior acts to demonstrate intent, "there must be a logical theory, *other than propensity*, demonstrating how the prior acts connect to the intent required to commit the charged offense." *State v. Wade*, 98 Wn. App. 328, 334, 989 P.2d 576 (1999). Asserting that a prior act shows intent is not a "'magic [password] whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in [its name].'" *Id.* (alteration in original) (quoting *State v. Saltarelli*, 98 Wn.2d 358, 364, 655 P.2d 697 (1982)).

"To use prior acts for a nonpropensity based theory, there must be some similarity among the facts of the acts themselves." *Id*. at 335. Generally, using prior acts to prove intent is "based on propensity when the only commonality between the prior acts and the charged act is the defendant." *Id*.

When a court errs by admitting evidence in violation of ER 404(b), "we apply the nonconstitutional harmless error standard." *State v. Gunderson*, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014). This requires us to determine whether there is a reasonable probability that the outcome of the trial could have been materially affected had the error not occurred. *Id*. The

error is harmless if the improperly admitted evidence is of little significance in light of the evidence as a whole. *State v. Fuller*, 169 Wn. App. 797, 831, 282 P.3d 126 (2012).

B.      *Even if the Trial Court Erred in Admitting the Other Crimes Evidence, the Error Was Harmless*

To convict Milliron of first degree assault while armed with a firearm, the State had to show that Milliron, "with intent to inflict great bodily harm," "[a]ssault[ed] another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1)(a).

To convict Milliron of drive-by shooting, the State had to show, among other things, that Milliron "recklessly discharge[d] a firearm . . . in a manner which creates a substantial risk of death or serious physical injury to another person." RCW 9A.36.045(1). "A person is reckless or acts recklessly when [they] know[] of and disregard[] a substantial risk that a wrongful act may occur and [their] disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c). Consistent with RCW 9A.36.045(2), the trial court instructed the jury that it may but was not required to infer that a person acts recklessly when firing from a moving vehicle.

Evidence at trial showed that the driver of the sedan shot Lubov's truck, with three bullets making impact. At the time of the incident, Lubov got a "good look" at the driver of the sedan, and later, Lubov identified Milliron as the shooter from a photo montage. 2 RP (June 8, 2023) at 399. In addition, police found a wallet, which contained Milliron's social security card and driver's license, on the ground near the parked sedan with a warm hood. Furthermore, forensic tests of the shell casings and bullet fragments from the crime scene as well as the

13

handgun from the RV in which police later found Milliron showed that all three shell casings and at least one of the bullet fragments were fired from the handgun.

From that evidence alone, the jury could have found that, for the first degree assault charge, Milliron, with intent to inflict great bodily harm, assaulted Lubov with a firearm, and for the drive-by shooting charge, that Milliron recklessly discharged a firearm, which created a substantial risk of death or serious physical injury to Lubov.[7] This evidence, taken together, establishes that there is no reasonable probability that the outcome of the trial would have been different absent the alleged evidentiary error. Thus, we hold that any evidentiary error was harmless.[8]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Milliron also contends that his counsel was ineffective for failing to move to exclude testimony that Milliron said an offensive racial slur during one of his other crimes. Specifically,

---

[7] This is consistent with Milliron's contention that the acts of shooting at a car and shooting from a car were proof of intent for the charged crimes. Milliron relies on *State v. Powell*, 126 Wn.2d 244, 893 P.2d 615 (1995). In *Powell*, our Supreme Court held that the trial court erred by admitting prior misconduct evidence to prove intent because intent was not a disputed issue. *Id.* at 262. The court noted that none of the contested evidence was necessary to prove intent as proof of the act of manual strangulation, among other things, established the defendant's intent to kill. *Id.* "Thus, intent [was] implicit in the doing of the act." *Id.* Though the parties did dispute intent here, the contested evidence was nonetheless unnecessary to prove intent as proof of the act of shooting at Lubov's car from a vehicle, among other evidence, established Milliron's intent to inflict great bodily harm and recklessly discharge a firearm.

[8] Milliron argues that even if the State had shown a permissible purpose for the evidence under ER 404(b), the trial court abused its discretion "in relation to the required balancing." Br. of Appellant at 35. In other words, Milliron contends that the trial court erroneously admitted evidence of the Oregon crimes because it did not properly weigh the probative value against the prejudicial effect of the evidence. Milliron also argues there was "additional prejudice regarding the jail call." Br. of Appellant at 36. In light of our decision, we need not decide these issues. Even if the trial court erroneously admitted evidence of other crimes and the jail recording, such error was harmless.

Milliron argues that his counsel's performance fell below an objective standard of reasonableness when counsel failed to move for the exclusion of said evidence because "jurors would [ ] have had strong negative feelings engendered against" Milliron. We conclude that even if defense counsel's performance was deficient, Milliron fails to show prejudice.

A.      *Legal Principles*

Criminal defendants have the right to effective assistance of counsel at every critical stage of the proceeding. U.S. CONST. amend. VI; WASH. CONST. art. I, §22.

To succeed on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We do not need to address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). There is a strong presumption that counsel's performance was effective. *Id.* at 130. To rebut this presumption, a defendant must show that there was no possible legitimate trial tactic that would explain counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

To show prejudice, a defendant must demonstrate a reasonable probability that the outcome of the trial would have differed absent the deficient performance. *Bertrand*, 3 Wn.3d at 129. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice. *Strickland*, 466 U.S. at 693. If a claim of ineffective assistance

15

of counsel fails to establish a finding of either deficient performance or prejudice, it fails. *Id.* at 697.

If a defendant's claim of ineffective assistance is based on their attorney's failure to file a particular motion, then they must also show that the motion would have been granted in order to establish prejudice. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995).

B.      *Milliron Fails to Show Prejudice*

As Milliron's claim of ineffective assistance centers on his attorney's failure to move to exclude evidence, to show prejudice he must demonstrate both a reasonable probability that the outcome of the trial would have been different absent the deficient performance and that the trial court would have granted his attorney's motion. *Bertrand*, 3 Wn.3d at 129; *McFarland*, 127 Wn.2d at 333-34. At trial, a witness testified that prior to the driver shooting Bryant, the driver had passed by in his car and said, "Shut up, N[**]ger." 2 RP (June 8, 2023) at 581. As explained earlier, there was overwhelming evidence of Milliron's guilt. This evidence, taken together, establishes that there is no reasonable probability that the outcome of the trial would have been different if the witness had not included the racial slur in her testimony about the Bryant incident. Thus, we hold that Milliron's ineffective assistance of counsel claim fails because he cannot show prejudice.

## CONCLUSION

We hold that any evidentiary error was harmless and that Milliron's ineffective assistance of counsel claim fails. Accordingly, we affirm Milliron's convictions for first degree assault while armed with a firearm and drive-by shooting.

16

No. 59100-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Glasgow, J.