# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73340-1-I |
|  | ) |  |
| Respondent, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| MARTIN ANTHONY BURTON, | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: May 2, 2016 |
|  | ) |  |

Cox, J. — Martin Anthony Burton appeals his convictions for second degree assault and felony harassment. He first contends his trial counsel provided ineffective assistance by offering an instruction that introduced evidence of a prior assault. He then claims that his counsel was ineffective by failing to offer a limiting instruction addressing other evidence of prior bad acts. He further claims counsel's limiting instruction was flawed because it did not specifically caution the jury against using the prior assault as propensity evidence. Because Burton fails to establish either deficient performance or prejudice, and the instruction limited the jury's use of the prior crime, we affirm.

On August 11, 2014, Martin Burton and R.W. entered a West Seattle QFC. Both were intoxicated. R.W. had visible scrapes, cuts, and bruises. She had blood on her face and her eyes were swollen from crying. Assistant store manager Travis Patricelli watched the two enter and noted that Burton was yelling at R.W. Burton told R.W. that "if I go to jail, when I get out I'm going to kill you." R.W. looked frightened and asked for someone to call the police.

When police arrived, R.W. told them that Burton "beat her by slapping and punching her face and ribs and by choking her." She said that when she tried to flee, Burton grabbed her hair and throat then slammed her into the ground. R.W. told the officers that "if she said anything that [Burton] would kill her."

She told police that this was not the first time Burton had attacked her. She said the day before he had choked her, slammed her head, and raped her.

When police spoke to Burton, he was agitated and said "[o]h, no, I'm not under arrest." He eventually complied and was arrested.

The State charged Burton with second degree assault—domestic violence, and felony harassment—domestic violence. After a three-day trial, the jury convicted Burton as charged. The court imposed concurrent sentences for each conviction for a total of 45 months confinement.

Burton appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Burton argues that he received ineffective assistance of counsel. His claim is based on a limiting instruction proposed by his attorney which, in his view, provided evidence of a prior assault not otherwise before the jury. We disagree.

A defendant's right to counsel includes the right to effective assistance of counsel.[1] A claim for ineffective assistance of counsel has two elements. Failure

---

[1] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Crawford, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006).

to demonstrate either is fatal to the claim.[2]

First, the defendant must show counsel's performance was deficient.[3] This requires showing counsel's performance fell below an objective standard of reasonableness.[4] In reviewing claims for ineffective assistance, we are "highly deferential to counsel's performance."[5] We assume that counsel provided effective representation and require the defendant show that no "legitimate strategic or tactical reason" exists for the alleged action.[6]

Second, a defendant must show prejudice. Prejudice is a reasonable probability that but for counsel's error the result of the proceeding would have been different.[7] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[8]

Before trial, the State moved in limine to admit evidence of Burton's past physical and sexual abuse of R.W., as well as evidence of a prior assault in which Burton attacked one of her friends named Virginia. The court concluded that Burton's prior abuse of R.W. was admissible to prove her state of mind. Later, the court concluded Burton's assault of Virginia was also admissible.

During R.W.'s direct examination, the State unsuccessfully attempted to elicit testimony about the assault:

[STATE]: Do you know a woman named Virginia?

---

[2] Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).
[3] Strickland, 466 U.S. at 687.
[4] Id. at 688.
[5] In re Pers. Restraint of Gomez, 180 Wn.2d 337, 348, 325 P.3d 142 (2014).
[6] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).
[7] Strickland, 466 U.S. at 694.
[8] Id.

[R.W.]: My street auntie.

. . .

[STATE]: And, Ms. [R.W.], you spent some time in the jail, correct?
[R.W.]: Correct.
[STATE]: Was there a time where you and your street Auntie Virginia were in jail together at the RJC?
[R.W.]: Yes.
[STATE]: Did she tell you about anything that the defendant had done to her recently that would cause her injury?
[R.W.]: I asked her if she had seen my fiancé, or my ex now, but my fiancé at the time, Martin Anthony Burton, and she said, "He's in jail." He was in jail because I was—
[BURTON]: Objection.

. . .

[R.W.]: This is really frustrating. I also have a court hearing I have to go to, and I'm in custody. I'm, just—this is too much for me.
[STATE]: I know it's overwhelming.
[R.W.]: I'm not—I've never been through this before.[9]

The State discontinued its questioning about Virginia following this exchange.

Defense counsel proposed a limiting instruction related to the assault.

The instruction stated that the evidence could only be used for the purpose of determining whether R.W. reasonably believed Burton would carry out his threat to kill her:

> I am allowing evidence that [R.W.] knew of Defendant's prior assault against a person named Virginia. You may consider this evidence only for the limited purpose of considering whether [R.W.] knew about this assault prior to August 11, 2014, and whether or not the State has proved that her fear that the Defendant would carry out his threat to kill her, was reasonable. You must not consider this evidence for any other purpose.[10]

In closing, defense counsel addressed the instruction and argued there was insufficient evidence about the assault to demonstrate R.W.'s state of mind:

> Now, let me say something about that. We heard very little

---

[9] Report of Proceedings (March 18, 2015) at 136-38.
[10] Clerk's Papers at 51.

about the context in which [R.W.] heard that [Burton] had done this to another person. We don't know whether she—well, she wasn't there. She said that Virginia told her that. We don't know whether or not he threatened to kill Virginia. So I would submit to you, ladies and gentlemen, that the lack of context and follow up to that doesn't provide a reasonable basis for being afraid that [Burton] would kill her. But the fact is, we would submit, that he didn't say anything like that.[11]

Burton claims his attorney's performance was deficient because the limiting instruction introduced evidence of a prior assault not otherwise before the jury, and counsel "elaborate[d] on this omitted evidence" during closing. He claims this allowed the jury to draw the "most damaging inference that could be drawn from this evidence: that Burton had assaulted and possibly threatened to kill someone before, so he must have done it again."

In some cases, proposing a detrimental instruction may constitute deficient performance. Burton claims this principle applies here, citing State v. Aho, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999), and State v. Woods, 138 Wn. App. 191, 197-98, 156 P.3d 309 (2007). But those cases are not persuasive because each involved an instruction that misstated the law. In Aho, defense counsel agreed to an instruction misstating the elements of the crime. And in Woods, defense counsel proposed an instruction misstating the legal standard for self-defense.

In this case, the State asked R.W. whether she knew of "anything that the defendant had done to [Virginia] recently that would cause her injury?" The clear implication was that Burton injured Virginia. It is reasonable to assume that

---

[11] Report of Proceedings (March 19, 2015) at 288-89.

defense counsel sought to prevent any improper reliance on this question by requesting the limiting instruction. Thus, we also are unpersuaded by Burton's argument that the jury could not rely on the State's question because it was not evidence. The State's question brought the issue before the jury, and counsel chose to request an instruction to limit the use of the information. Burton has not met his burden of showing deficient performance.

Yet even assuming error, Burton cannot show prejudice. The instruction required the jury to restrict its use of the evidence to determining whether R.W. reasonably feared Burton would actually kill her. Furthermore, the court instructed the jury to base its decision only on the trial testimony and exhibits:

> It is your duty to decide the facts in this case based upon the evidence presented to you during this trial.
> . . .
> The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, stipulations and the exhibits that I have admitted during the trial. If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict.
> . . .
> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits.[12]

We presume the jury follows the court's instructions.[13]

Finally, there is no support for Burton's claim that the instruction allowed the jury to speculate that he threatened to kill someone before. The State's

---

[12] Clerk's Papers at 41-43.
[13] State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001).

question, the instruction, and counsel's argument addressed only an assault. Burton's claim for ineffective assistance of counsel fails.

*Failure to Request a Limiting Instruction*

Burton next argues that his attorney was ineffective for failing to request a limiting instruction addressing the uncharged acts involving R.W. Again, we are unpersuaded.

In general, "[i]f evidence of a defendant's prior crimes, wrongs, or acts is admissible for a proper purpose, the defendant is entitled to a limiting instruction upon request."[14]

At trial, R.W. made numerous nonresponsive assertions regarding Burton. For instance, she stated that Burton had been in jail and the department of corrections. She said he "almost choked" three men to death and had sexually assaulted other women. She stated that Burton was a "violent man" and a "rapist," mentioned he had a "crack habit," and said he was "sleeping with other women." She frequently failed to answer direct questions, volunteered unnecessary information, and demonstrated anger towards counsel.

She also testified that the day before the incident at QFC, Burton had choked her, slammed her in the head, and raped her.

Burton's attorney requested two curative instructions at trial. First, when R.W. testified that she felt scared for her family. Second, when Officer Christopher Johnson testified that R.W. appeared to "take [Burton] serious" and seemed "genuinely afraid." Following R.W.'s testimony, defense counsel

---

[14] State v. Gresham, 173 Wn.2d 405, 423, 269 P.3d 207 (2012).

specifically contemplated, and withdrew, a motion for a mistrial and limiting instruction for strategic reasons:

> [DEFENSE]: Your Honor, I withdraw the request. We were thinking of a motion for mistrial, but we're not proceeding with that kind of motion.
> THE COURT: All right. Okay. All right. And I take it that you've talked to your client about potential issues of that? And just so—I think I understand why you would want to do that, but just for the appellate record, so nobody would second guess—
> [DEFENSE]: So let me make the record clear.
> THE COURT: Right. Okay.
> [DEFENSE]: I did speak with Mr. Burton about, strategically, that we had enough basis to move for a mistrial based on several things that the alleged victim said on cross-examination; specifically referring to his being in jail in other cases and multiple other assaults compounding with what she said about him assaulting other people in the community. I couldn't count the number of times she was also nonresponsive to my questions and tried to volunteer information that was prejudicial in character and in nature about Mr. Burton. I would usually move for a mistrial. I asked the Court already to give the jury a curative instruction regarding the issues in this case, and to disregard what she was saying. What I would do in this instance is ask the Judge again to give the jury a curative instruction to disregard anything the witness may have said that was either nonresponsive to my questioning or not relevant to the facts that are at issue in this trial.
> THE COURT: Okay. But just for the purposes of appellate review on any alleged ineffective assistance of counsel, you've had a chance to talk to your client, and so for strategic reasons you are deciding not to bring that motion for mistrial; is that correct?
> [DEFENSE]: That's correct. My client wants me to go forward.
> THE COURT: Okay. Thank you. Counsel, anything else on that issue?
> [DEFENSE]: No. Thank you.[15]

Counsel then withdrew his request for a curative instruction.

---

[15] Report of Proceedings (March 18, 2015) at 173-74.

In closing, defense counsel acknowledged that "something" happened between R.W. and Burton, but claimed that R.W. was lying and presented an incoherent story:

> The Defense at this point has to tell you, in all candor, that something happened on August 11, 2014. Hiding from that, hiding from the fact that Mr. Burton was seen by multiple witnesses yelling at [R.W.], that [R.W.] herself was angry about something, that anger you saw on the stand when she talked about the woman that Mr. Burton was messing with. But the truth of what happened, like [R.W.]'s lies, like Martin Burton's life, is shrouded in the chaos and the anger of her jumbled story where she alternates in telling that story from a weepy whisper, and then to misplaced anger and aggression at me for simply asking her how hard and how many times she was choked.[16]

Counsel argued that R.W.'s lack of a "linear narrative" was important to the jury's decision, and that the absence of physical corroboration for R.W.'s story undermined her credibility. Likewise, counsel argued that "[o]n the felony harassment, the threat to kill is a figment of [R.W.'s] active imagination."

Burton claims that there could be no strategic reason for failing to request a limiting instruction given the damaging nature of R.W.'s testimony. His citation to City of Seattle v. Patu, 108 Wn. App. 364, 369, 30 P.3d 522 (2001), however, is unpersuasive. That case involved the denial of defense counsel's requested limiting instruction, not counsel's decision to forego such an instruction for strategic reasons.

Instead, as Burton acknowledges, the decision to not request a limiting instruction may be tactical because the instruction can reemphasize the

---

[16] Report of Proceedings (March 19, 2015) at 285.

damaging evidence.[17]  Here, the decision to not request a limiting instruction was clearly strategic.  As closing argument shows, counsel's strategy of portraying R.W. as angry, incoherent, and lacking credibility was premised on her nonresponsive statements and her accusations.  A limiting instruction would only have undermined this approach.  We find no error.

## INSTRUCTIONAL ERROR

Burton also claims jury instruction 8, discussed above, was defective because it did not directly state the jury could not use the prior assault against Virginia as propensity evidence.  We disagree.

"Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law."[18]  We review an alleged error in a jury instruction de novo.[19]

Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such evidence is, however, admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Pursuant to ER 105, where evidence is admissible for one purpose but not another, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

As discussed above, the court's instruction on the prior assault specified the limited purpose for which the jury could use the evidence:

---

[17] State v. Barragan, 102 Wn. App. 754, 762, 9 P.3d 942 (2000).
[18] State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005).
[19] State v. Sibert, 168 Wn.2d 306, 311, 230 P.3d 142 (2010).

I am allowing evidence that [R.W.] knew of Defendant's prior assault against a person named Virginia. You may consider this evidence only for the limited purpose of considering whether [R.W.] knew about this assault prior to August 11, 2014, and whether or not the State has proved that her fear that the Defendant would carry out his threat to kill her, was reasonable. You must not consider this evidence for any other purpose.[20]

Burton argues that a proper ER 404(b) limiting instruction must include specific language telling the jury it may not use the prior assault to make a conclusion about propensity. He relies on Gresham, where the court explained that an ER 404(b) limiting instruction should inform the jury that "the evidence may not be used for the purpose of concluding that the defendant has a particular character and has acted in conformity with that character."[21] But that case did not state any rule regarding the specific wording of such an instruction. Likewise, in State v. Lough, 125 Wn.2d 847, 889 P.2d 487 (1995), another case Burton cites, the court did not consider the form an ER 404(b) limiting instruction should take.

Here, the jury instruction did not mislead the jury and accurately stated the law. The trial court's instruction stated that the jury could only consider Burton's prior assault of Virginia "for the limited purpose" of determining whether R.W. reasonably believed he would kill her. The instruction, modeled after WPIC 5.30, stated "[y]ou must not consider this evidence for any other purpose." Where ER 404(b) evidence is before the jury, a limiting instruction "should explain to the jury the purpose for which the evidence is admitted, and should give a cautionary

---

[20] Clerk's Papers at 51.
[21] Gresham, 173 Wn.2d at 423-24.

-11-

instruction that the evidence is to be considered for no other purpose."[22]  The

instruction proposed by counsel restricted the jury's use of the evidence to its

proper purpose.  We find no error.

We affirm the judgment and sentence.

_____
Cox, J.


WE CONCUR:

_____            _____
Spearman, J.                                     Leach, J.


---

[22] State v. Brown, 113 Wn.2d 520, 529, 782 P.2d 1013 (1989).